IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AMY J. SELVERA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID STEINER, in his official capacity as Postmaster General of the United States Postal Service (USPS),<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | NO. 1:24-CV-01253-DAE |

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant David Steiner's, U.S. Postmaster General ("USPS" or "Defendant"), Motion to Dismiss (Dkt. # 23) Plaintiff Amy J. Selvera's ("Selvera" or "Plaintiff") First Amended Complaint ("FAC") (Dkt. # 22). The Court finds this matter suitable for disposition without a hearing. After careful consideration of the filings and the relevant law, the Court **GRANTS** Defendant's Motion to Dismiss (Dkt. # 23) **WITH PREJUDICE**. The Court will **DENY AS MOOT** Plaintiff's Unopposed Emergency Motion to Stay Proceedings. (Dkt. # 30.)

BACKGROUND

The Court will first recite the case's procedural history before detailing the factual and legal allegations Selvera raises in her FAC.

I. Procedural History

This Court previously granted Defendant's Motion to Dismiss (Dkt. # 12) Plaintiff's Original Complaint (Dkt. # 1). (Dkt. # 18.) The Court granted Plaintiff leave to amend, directed Plaintiff "to amend her pleadings to address the deficiencies discussed herein," and it warned that she would face dismissal should an amended pleading fail to do so.[1] (Id. at 17.)

Plaintiff untimely filed her FAC on July 1, 2026.[2] (Dkt. # 22.) Defendant filed its Motion to Dismiss on July 13, 2026. (Dkt. # 23.) Plaintiff filed a Response in Opposition on August 10, 2026. (Dkt. # 25.) Defendant then replied on August 8, 2026. (Dkt. # 26.)[3]

---

[1] The Court acknowledges that its previous Order stated that Plaintiff's claims would be dismissed "without prejudice" should she fail to file an amended complaint addressing the deficiencies. (See Dkt. # 18.) The Court intended to say "*with* prejudice." In any event, the Court retains discretion to dismiss claims with prejudice when it is apparent that future amendments would prove futile. For reasons discussed herein, it concludes that further amendment in this case would be futile. See infra.

[2] The Court granted Plaintiff leave to file out of time, finding good cause existed due to "Defendant's lack of response in opposition, Plaintiff's *pro se* status, and Plaintiff's delay in receipt of the Court's Order." (Text Order, June 24, 2026 (granting Dkt. # 19).)

[3] The Court notes that Defendant's Counsel refers to Plaintiff by her first name in its Reply. (Dkt. # 26.) Unlike other cases where multiple parties share a surname and referencing a party by his or her first name or a nickname is necessary to avoid confusion, no such circumstance exists here. The Court reminds Counsel not to depart from the Court's longstanding customs of professionalism.

## II. Factual Allegations[4]

This case arises out of Plaintiff's employment as a rural carrier at the Blue Bonnet Post Office in Austin, Texas. (Dkt. # 22-9 at 1.) Plaintiff identifies as a Hispanic female. (Id. at 2.) Plaintiff's FAC focuses on three instances of alleged retaliation and harassment. First, Plaintiff alleges that on June 8, 2023, her manager, Jonathan Taylor, accused her of falsifying scans, for which Plaintiff attests she was not properly trained, but when she told him that two Black coworkers were doing the same, he defended them. (Dkt. # 1-2 at 5–6. But see Dkt. # 22 (omitting reference to Selvera's coworkers).)[5] Second, on June 13, 2023, Plaintiff alleges she was informed that she would not receive premium work opportunities (such as overtime hours). (Dkt. # 22 at 2.) Plaintiff implies that Taylor told her she will never receive overtime again. (See id.) And third, on June 23, 2023, Plaintiff alleges that Taylor sent her an empty resignation form and a Notice to Report letter while she was out on FMLA leave. (Id. at 3; Dkt. # 22-5 at

---

[4] As it must on a motion to dismiss for failure to state a claim, the Court accepts facts in Plaintiff's complaint as true. See, e.g., United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013).

[5] Although Selvera did not re-attach the same Final Agency Decision to her FAC, the Court's obligation to liberally construe a *pro se* plaintiff's filings permits it to reference the Final Agency Decision as if it were reattached. See, e.g., Collins v. Dall. Leadership Found., 77 F.4th 327, 330 (5th Cir. 2023). Notably, however, the Court's consideration of this document does not alter the Court's decision.

1.) The Notice to Report letter, which was signed by USPS Attendance Ambassador Shara Herndon, stated that Plaintiff was being charged Absent Without Leave (AWOL) and that she could be removed if she did not provide medical documentation to support her absence. (Dkt. # 22-4.)

III. Legal Allegations

Plaintiff's FAC enumerates two distinct causes of action under Title VII against USPS.[6] First, Selvera alleges that USPS retaliated against her after "she engaged in protected EEO activity when she reported harassment and discrimination and participated in the subsequent investigation." (Dkt. # 22 at 3.) Second, Selvera brings a claim for hostile work environment. (See id.) Specifically, she pleads that she "was subjected to unwelcome harassment and hostility." (Id.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." When analyzing a motion to dismiss for failure to state a claim, the Court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" Kellogg Brown, 727 F.3d at 346 (quoting In re Katrina Canal Breaches

[6] As discussed below, Plaintiff no longer pleads Title VII discrimination, which she had alleged in her Original Complaint. (See Dkt. # 1.)

Litig., 495 F.3d 191, 205 (5th Cir. 2007)). The Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011) (quoting Tellabs Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See Twombly, 550 U.S. at 555–56; cf., e.g., Lowy v. Daniel Def., LLC, 167 F.4th 175, 193 (4th Cir. 2026) ("Plaintiffs are not required to prove their case in the complaint." (citation modified)).

In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. See Twombly, 550 U.S. at 556–57. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal,

556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

Thus, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. When allegations do not rise "above the speculative level," the complaint fails to adequately state a claim and the Supreme Court has held that such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558 (citation omitted). However, "a motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" Turner v. Pleasant, 663 F.3d 770, 775 (5th Cir. 2011) (quoting Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009)).[7]

[7] When a 12(b)(6) motion is granted, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002). But see infra (discussing exceptions to this rule when amendment would be "futile").

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the Court addresses its inquiry is limited to the (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rules of Evidence 201." Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019).

## DISCUSSION

Plaintiff's FAC pleads claims under Title VII for retaliation and hostile work environment. (Dkt. # 22 at 3–4.) As opposed to her Original Complaint, which asserted claims for Title VII discrimination as well, Plaintiff does not assert a claim for Title VII. (See Dkt. # 22.) Defendant again moves to dismiss Plaintiff's retaliation and hostile work environment claims. (See Dkt. # 23.)

As it did in its prior Order, the Court will first assess the question of administrative exhaustion before reaching the merits of the claims. (Cf. Dkt. # 18 at 5–9.)

### I. Administrative Exhaustion

Again, Defendant urges the Court to dismiss Plaintiff's retaliation claims because Plaintiff did not timely exhaust her administrative remedies. (See Dkt. # 23 at 6–10.) "Before a federal civil servant can sue h[er] employer for

violating Title VII, [s]he must . . . 'initiate contact' with an Equal Employment Opportunity counselor at h[er] agency 'within 45 days of the date of the matter alleged to be discriminatory.'" Green v. Brennan, 578 U.S. 547, 549–50 (2016) (quoting 29 C.F.R. § 1614.105(a)(1) (2015)). "Failure to notify the EEO counselor in timely fashion may bar a claim, absent a defense of waiver, estoppel, or equitable tolling." Pacheco v. Rice, 966 F.2d 904, 905 (5th Cir. 1992). In Fort Bend County v. Davis, the Supreme Court held that, rather than pertaining to subject-matter jurisdiction, "[p]rerequisites to suit like Title VII's charge-filing instruction [with the EEOC] . . . are properly ranked among the array of claim-processing rules that must be timely raised to come into play." 587 U.S. 541, 543–44 (2019); see also id. at 551 ("Title VII's charge-filing requirement is a processing rule, albeit a mandatory one . . . ."). "The exhaustion requirement ensures that: (1) the EEOC has an opportunity to fulfill its statutory duty to investigate the charge of discrimination, and (2) the employer has notice of the alleged discrimination so it can take appropriate measures to correct or remedy the discrimination." Johnson v. MBNA Hallmark Info. Srvs., Inc., No. 3:02-CV-0177-K, 2003 WL 21418670, at *1 (N.D. Tex. Jun.16, 2003).

Here, Plaintiff contacted the EEO counselor on August 2, 2023. (Dkt. # 12-1 at 2.) As the Court previously noted, "June 18, 2023, is forty-five days prior to August 2, 2023." (Dkt. # 18 at 7.) It therefore follows that the incidents

that occurred on June 8th and 13th were not timely exhausted. See Green, 578 U.S. at 549. Because Defendant raised Plaintiff's untimely exhaustion of administrative remedies, and Plaintiff's invocation of the continuing violation and equitable tolling doctrines is without merit, the Court must enforce Title VII's mandatory claims processing rule. (See Dkts. ## 23 at 6–10; 25 at 1–3); Davis, 587 U.S. at 543–44.

As explained in the Court's previous Order (see Dkt. # 18 at 7–8), the continuing violations doctrine applies only to hostile work environment claims—it is inapplicable to claims of discrete acts. See Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll., 850 F.3d 731, 737 (5th Cir. 2017) ("Claims alleging discrete acts are not subject to the continuing violation doctrine; hostile workplace claims are."). Accordingly, Plaintiff cannot save her discrimination and retaliation claims that arise from the June 8th and 13th incidents. See id.; (cf. Dkt. # 22 at 2–3.) Similarly, equitable tolling may apply when a defendant intentionally conceals facts supporting the plaintiff's claims or the EEO misleads the plaintiff about her rights. See Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 880 (5th Cir. 2003). However, as with her Original Complaint (Dkt. # 1), Plaintiff has not alleged any new fact plausibly suggesting that Defendant intentionally concealed facts material to her claims. See Manning, 332 F.3d at 880; (cf. Dkt.

# 22.) Nor has she alleged that the EOO misled her about her rights. See Manning, 332 F.3d at 880.

Instead, and much like Selvera's Original Complaint and Response to Defendant's initial Motion to Dismiss—in which she averred that she did not immediately contact the EEO because her manager temporarily ceased the retaliatory behavior and she believed the issue to be resolved (see Dkts. ## 1; 16)—Selvera's FAC indicates that "the conduct complained of by Plaintiff significantly decreased" following the November 15, 2022, investigation and that "Plaintiff did not pursue additional EEO activity concerning certain incidents at that time because Plaintiff believed the matters had been addressed." (Dkt. # 22 at 2.) Furthermore, Selvera's FAC does not allege that she was unaware of or that USPS misled her regarding any supporting facts. To the contrary, her FAC alleges that Selvera herself made a conscious decision not to contact the EEO. (Compare id. (omitting any factual allegation that Defendant intentionally concealed facts or otherwise misled Plaintiff about her rights), with Dkt. # 16 at 3 (reflecting Plaintiff's argument in her Response in Opposition to Defendant's first Motion to Dismiss that "[b]elieving the issue might be resolved internally, Plaintiff did not immediately file").)

Thus, the only alleged incident properly before the Court is the June 23, 2023, incident in which Plaintiff attests she received a Notice to Report letter

and empty resignation form in the mail while she was out on FMLA leave. (See Dkt. # 22 at 2–3.)

## II. Merits of the Claims

Defendant next argues Plaintiff's retaliation claims fail because the Notice to Report letter does not constitute an adverse action.[8] (Dkt. # 23 at 9–11.)

### A. Retaliation Claim

To make out a prima facie retaliation claim, the plaintiff must allege: "(1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal connection between the two." January v. City of Huntsville, 74 F.4th 646, 653 (5th Cir. 2023). A protected activity is defined as an "opposition" to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII. See 42 U.S.C. § 2000e-3(a).

---

[8] As discussed above, Plaintiff has abandoned her discrimination claim because she does not plead it in her FAC. See, e.g., King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."); see also Soliz v. Alamo Colls. Dist., No. 5:25-CV-00930-DAE-RBF, 2026 WL 2752108, at *2 (W.D. Tex. Aug. 28, 2026) ("[F]ailure to raise in the amended complaint the claims from an earlier pleading abandons them, regardless of *pro se* status." (citing Stewart v. City of Hou. Police Dep't, 372 Fed. App'x 475, 478 (5th Cir. 2010) (per curiam) (unpublished) (citation modified) (relying on King)), report and recommendation adopted, 2026 WL 2751683 (W.D. Tex. Sep. 16, 2026).

In the context of a retaliation claim, an "'[a]dverse employment action' is a materially adverse action that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Lindsley v. TRT Holdings, Inc., 984 F.3d 460, 470 (5th Cir. 2021) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). What is more, a plaintiff does not need to allege an adverse employment action that constitutes an ultimate employment decision. See Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll., 90 F.4th 449, 460–61 (5th Cir. 2024) (explaining that a district court "erred when it required [the plaintiff] to show that she suffered an 'adverse employment action' 'consist[ing] of ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating" to withstand summary judgment (alterations in original) (citation modified)).

The causation requirement of a Title VII retaliation claim may be satisfied by showing "close timing between an employee's protected activity and an adverse action against [her]." Garcia v. Pro. Cont. Servs., Inc., 938 F.3d 236, 241 (5th Cir. 2019) (citation modified). To establish causation by temporal proximity alone, the protected activity and the adverse employment action must have occurred "very close" in time to one another. See Brown v. Wal-Mart Stores E., L.P., 969 F.3d 571, 578 (5th Cir. 2020); see also Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) ("The cases that accept mere temporal

proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." (citation modified)).

Here, Plaintiff engaged in a protected activity when she previously filed an EEO case, the most recent of which occurred in August 2022. (Dkt. # 22-1 at 5–6.) The Court also finds, based on the limited record and this stage of the proceedings, that being provided with an empty resignation form *may* be interpreted as an implicit threat to employment that could dissuade a reasonable worker from making or supporting a charge of discrimination. See Lindsley, 984 F.3d at 470. However, as with her Original Complaint (see Dkt. # 1), Plaintiff has not pleaded any causal connection between her protected activity and her receipt of the resignation letter. (See Dkt. # 22 at 2–3.) As with the argument that she advanced in her Response in Opposition to Defendant's first Motion to Dismiss (see Dkt. # 16 at 6), Plaintiff's only argument in support of the causation element remains temporal proximity. (See Dkt. # 25 at 3–4.) To the extent that Selvera asserts new factual allegations in her Response, they are not properly before the Court. See Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir. 1990) (holding that a "claim [that] was not raised in [the plaintiff]'s second amended complaint but, rather, was raised in his response to the defendants' motions for

summary judgment . . . was not properly before the court"); accord Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008) ("Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint . . . .").[9]

Plaintiff's most recent complaint was closed in August 2022, ten months prior to receiving the Notice to Report letter and resignation form on June 23, 2023. (Dkt. # 1-2 at 6.) The Court finds that a gap of ten months, standing alone, is too great to establish a causal connection between the protected activity and adverse employment action. Cf., e.g., Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471–72 (5th Cir. 2002) (finding a five-month period insufficient to support retaliation); Myers v. Crestone Int'l, LLC, 121 Fed. App'x 25, 28 (5th Cir. 2005) (finding a three-month period insufficient to establish causation). Accordingly, Plaintiff's retaliation claim should be dismissed.

B. Hostile Work Environment Claim

Lastly, Plaintiff brings a Title VII hostile work environment claim, alleging that she was subjected to "an ongoing pattern of workplace retaliation and intimidation by management" through "reduction of hours, denial of overtime

---

[9] Mindful of the footnote that the Court included in its prior Order, which explained that it would consider attachments to Selvera's *pro se* Complaint, the Court notes that the same guidance does not apply to Selvera's Response in Opposition or any attachments thereto. (See Dkt. # 18 at 6 n.2.)

opportunities, false accusations of misconduct, exclusion from the workplace, and the issuance of resignation papers while Plaintiff was on approved FMLA leave." (Dkt. # 22 at 3.)

"A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive work environment.'" Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 328 (5th Cir. 2009) (quoting National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002)). To assert a claim of hostile work environment under Title VII, a plaintiff must plead that she:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 651 (5th Cir. 2012) (quoting Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)).

Here, Plaintiff does not allege hostile work environment based on protected status. Instead, she appears to state a claim for *retaliatory* hostile work environment. (See Dkt. # 22 at 2–4.) As detailed in the Court's previous Order, "[a]lthough courts in this district are split as to whether the Fifth Circuit recognizes such a claim, the undersigned has previously recognized this hybrid claim." (Dkt.

# 18 at 15.) Compare McCorvey v. Univ. of Tex. Health Sci. Ctr. at S.A., No. 5:16-CV-631-DAE, 2016 WL 8904949, at *11–13 (W.D. Tex. Dec. 21, 2016) (collecting cases and analyzing merits of claim), and Castro v. Bexar Cnty., No. 5:23-CV-08-DAE, 2024 WL 3071571, at *4–5 (W.D. Tex. May 14, 2024) (collecting cases and analyzing merits of claim), with Bryan v. Chertoff, No. EP-04-CA-258-DB, 2005 WL 2206129, at *8 (W.D. Tex. Sep. 8, 2005) (granting summary judgment because "the Court is unaware of any authority, and Plaintiff provides none, that allows Plaintiff to bring a cause of action for hostile work environment based on reprisal for having engaged in prior protected activity"), aff'd, 217 Fed. App'x 289 (5th Cir. 2007) (affirming without deciding whether a retaliatory hostile work environment claim exists because the plaintiff failed to establish a prima facie case). Therefore, in line with this Court's historical approach, the Court will again assess whether Plaintiff has pleaded sufficient facts to support a retaliatory hostile work environment claim. (See Dkt. # 22.) The analysis is unchanged from the Court's previous Order. (See Dkt. # 18 at 15–17.) Plaintiff sets forth no new facts in her FAC, and the Court cannot consider those asserted for the first time in her Response to Defendant's Motion to Dismiss, see Fisher, 895 F.2d at 1078; Dorsey, 540 F.3d at 338.

When combining the tests for retaliation and hostile work environment into a hybrid retaliatory hostile work environment claim, "the first

and third elements of the hostile work environment claim shift focus: 'In the retaliation context, the first element would require proof that the plaintiff had engaged in protected activity, and the third element would require demonstration of a causal connection between the harassment and the protected activity.'" McCorvey, 2016 WL 8904949, at *11 (quoting Tejada v. Travis Assoc. for Blind, No. A-12-CV-997-DAE, 2014 WL 2881450, at *3 (W.D. Tex. June 25, 2014) (citation modified)). Thus, a retaliatory hostile work environment claim requires a plaintiff to show: (1) she engaged in a protected activity; (2) she was subject to harassment; (3) there was a causal connection between the harassment and the protected activity; (4) the harassment affected a term, condition, or privilege of her employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. Castro, 2024 WL 3071571, at *4.

The Court need not reach each of the five factors because Plaintiff has failed to establish the causation element for the same reasons previously discussed. Rather, Plaintiff renews her conclusory allegations of "a broader pattern of adverse treatment following her EEO protected activity." (Dkt. # 22 at 3.) Moreover, the only concrete, non-conclusory examples provided in the FAC are the previously detailed June instances. Even assuming that Plaintiff was subjected to harassment in June 2023, the 10-month gap, standing alone, is too tenuous to establish a causal connection. See Raggs, 278 F.3d at 471–72; Myers, 121 Fed. App'x at 28.

Accordingly, Plaintiff has failed to state a claim for retaliatory hostile work environment.

* * *

The Court previously granted Plaintiff leave to amend upon her request. (See Dkts. ## 16 at 18 (requesting leave to amend); 18 at 17 (granting leave to amend).) The Court did so "in light of Plaintiff's *pro se* status and this Court's practice of freely granting leave to amend." (Id.) Plaintiff has not requested leave to amend her FAC. (See Dkt. # 25.)

The Fifth Circuit generally requires that parties request leave to amend. U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 387 (5th Cir. 2003) (observing that "Rule 15(a) applies where plaintiffs 'expressly requested' to amend even though their request 'was not contained in a properly captioned motion paper'") (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 701 (5th Cir. 1988)). "Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to *sua sponte* dismissal with prejudice." Borgos v. Laperton, No. 3:16-CV-2936-N-BK, 2017 WL 2912739, at *5 (N.D. Tex. June 10, 2017) (citing Brewster v. Dretke, 587 F.3d 764, 767–68 (5th Cir. 2009) (per curiam)), report and recommendation adopted, 2017 WL 2902679 (N.D. Tex. July 7, 2017).

Lastly, although "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed," a district court need not grant leave to amend where a plaintiff "has already pleaded his 'best case.'" Brewster, 587 F.3d at 767–68 (quoting Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). Setting aside that Selvera did not request leave to amend her FAC, the Court finds that granting leave to amend would be futile. Amendment is "futile" when, as here, another amended complaint "would fail to state a claim upon which relief could be granted." Legate v. Livingston, 822 F.3d 207, 211 (5th Cir. 2016). Here, for the reasons discussed above and with reference to the reasoning as articulated by the Borgos court with reference to a *pro se* plaintiff, the Court finds that any subsequent amendment of Selvera's complaint would be futile. See Legate, 822 F.3d at 211. Accordingly, Selvera "cannot, as a matter of law, state a colorable legal claim [for Title VII retaliation or hostile work environment] based on the legal theory and facts Plaintiff posits in [her] amended complaint. Consequently, granting leave to amend would be futile and cause needless delay." Borgos, 2017 WL 2912739, at *5.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motion to Dismiss (Dkt. # 23). Plaintiff's claims are **DISMISSED WITH PREJUDICE**. Plaintiff's Emergency Motion to Stay Proceedings is **DENIED AS**

**MOOT**. (Dkt. # 30.) The **CLERK** is **DIRECTED** to **ENTER FINAL JUDGMENT** and **CLOSE** the case.

**IT IS SO ORDERED.**

**SIGNED:** Austin, Texas, November 16, 2026.

__________________________________
David Alan Ezra
Senior United States District Judge